tutes a BFOQ include:

> whether " 'the essence of the business operation would be undermined' " without the challenged employment practice; whether safe and efficient performance of the job would be possible without the challenged employment practice; and whether the challenged employment practice has " 'a manifest relationship to the employment in question' ".

Chambers v. Omaha Girls Club, Inc., 834 F.2d 697, 704 (8th Cir. 1987) (emphasis in original) (citations omitted).  See Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); International Union, UAW v. Johnson Controls, Inc., 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991)[10]; and EEOC Compliance Manual, §13: National Origin Discrimination, ¶13-V(B)(1) (English Fluency) ("Generally, a fluency requirement is permissible only if required for the effective performance of the position for which it is imposed.").

As noted above, the racking, plating and unracking jobs at Berkshire as of and since November 2003 have been non-repetitive with fewer parts, more complex and of shorter duration.  Consequently, in contrast to the past, in order for the racking, plating and unracking jobs which Berkshire has been able to attract since November 2003 to be correctly, efficiently and safely performed, it is critical that the employees at Berkshire who perform such jobs be capable of understanding oral instructions in English since it is no longer possible for other bilingual employees at Berkshire to translate such oral English instructions into Spanish.  Conversely, if Berkshire is not able to require that rackers, platers and unrackers be capable of understanding oral instructions in English,

---

[10] While the cases uniformly require that the BFOQ defense be narrowly construed (International Union, UAW v. Johnson Controls, Inc., 499 U.S. at 201, 111 S.Ct. at 1204, 113 L.Ed.2d at 174, no case has been found which provides any specific guidance regarding how the narrow construction should be applied, particularly in the context of a national origin discrimination claim.

21

the business operations of Berkshire would be severely undermined.

Therefore, Berkshire's requirement that Cotto be capable of understanding oral instructions in English in connection with the performance of any racking, plating and/or unracking jobs which have existed at Berkshire since November 2003 constitutes a BFOQ as a matter of law and, as such, is an absolute defense to Cotto's Title VII claim of discrimination.  See Fragante v. City and County of Honolulu, 699 F.Supp. 1429, 1432 (D.Hawaii 1987) ("The requirement of being able to communicate clearly and effectively with often contentious general public is a bona fide occupational qualification which is necessary to the City's business of providing services and assistance to the general public concerning motor vehicles and licensing matters.", and justified defendant's refusal to hire the plaintiff who had deficient English skills as a clerk), aff'd, 888 F.2d 591, 596 (9th Cir. 1989) ("There is nothing improper about an employer making an honest assessment of oral communications skills of a candidate for a job when such skills are reasonably related to job performance."  (emphasis in original) (citations omitted)), cert. denied, 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 942 (1990); Garcia v. Rush-Presbyterian-St. Lukes Medical Center, 660 F.2d 1217, 1222 (7th Cir. 1981) (requirement that employees speak and read English was a BFOQ because requirement applied equally to all (not just Latino) national origins and the "ability to speak and read some English is a necessary, job-related requirement in this highly sophisticated medical care institution."); Mejia v. New York Sheraton Hotel, 459 F.Supp. 375, 377 (S.D.N.Y. 1978), aff'd in pertinent part, 21 FEP Cases 981 (2d Cir. 1979), on remand, 476 F.Supp. 1068 (S.D.N.Y. 1979) (hotel's requirement that front office cashier be able to adequately communicate in English was a BFOQ when it was "significantly related to

successful job performance and did not operate to exclude minority applicants at a higher rate than applicants who are not of that minority", thereby justifying hotel's refusal to promote an Hispanic chambermaid to the front office cashier position); Healey v. Southwood Psychiatric Hospital, 78 F.3d 128 (3d Cir. 1996) (because of therapeutic and privacy concerns hospital employee's gender was crucial to successful performance of job and, therefore, a BFOQ (permitting summary judgment)).  See also the following cases wherein it was held that there were legitimate, non-discriminatory reasons, and therefore no discrimination based upon national origin, for an adverse employment action where the plaintiff's lack of or inadequate English proficiency interfered with his/her ability to perform a job (although the issue of whether the English proficiency requirement constituted a BFOQ was not specifically addressed):  Vasquez v. McAllen Bag & Supply Co., 660 F.2d 686 (5th Cir. 1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3509, 73 L.Ed.2d 1384 (1982) (refusal to hire a Mexican-American truck driver); Shieh v. Lyng, 710 F.Supp. 1024 (E.D.Pa. 1989), aff'd, 897 F.2d 523 (3d Cir. 1990) (demotion of Taiwanese research scientist to chemist); Tran v. City of Houston, 35 FEP Cases 471 (S.D.Tex. 1983) (failure to promote a Vietnamese engineer to inspector); Chung v. Morehouse College, 11 FEP Cases 1084 (N.D.Ga. 1975) (failure to renew contract of Chinese teacher); De La Cruz v. New York City Human Resources Administration, DSS, 82 F.3d 16 (2d Cir. 1996) (job transfer of an Hispanic social worker); Casas v. First American Bank, 31 FEP Cases 1479 (D.D.C. 1983) (failure to promote Filipino money "specialist" to money manager); Dercach v. Indiana Department of Highways, 45 FEP Cases 899 (N.D.Ind. 1987) (failure to promote Spanish-speaking Ukrainian crew worker to foreman); Hou v. Commonwealth of Pennsylvania, Department of Education, 573

F.Supp. 1539 (W.D.Pa. 1983) (failure to promote Chinese associate professor to full professor); Madiebo v. Division of Medicaid/State of Mississippi, 2 F.Supp.2d 851 (S.D. Miss. 1997) (failure to hire Nigerian accountant/auditor as program coordinator); Hassan v. Auburn University, 833 F.Supp. 866 (E.D.Ala. 1993), aff'd, 15 F.3d 1097 (11th Cir. 1994) (failure to hire Egyptian visiting professor for permanent position); Stephen v. PGA Sheraton Resort, Ltd., 873 F.2d 276 (11th Cir. 1989) (discharge of Haitian purchasing clerk (although case decided on the basis of "race")); and Meng v. Ipanema Shoe Corp., 73 F.Supp.2d 392 (S.D.N.Y. 1999) (discharge of Chinese customer service representative).

**(C) BERKSHIRE'S "MIXED MOTIVATION"**:

Finally, even assuming that Cotto had offered direct evidence that Berkshire discriminated against him on the basis of his Hispanic national origin and, further, that Berkshire had not established that the requirement that Cotto be capable of understanding oral instructions in English was a BFOQ, as noted above, even if Cotto were capable of understanding oral instructions in English, Berkshire would still have laid Cotto off and not rehired him because there has not been a sufficient amount of work at Berkshire for Cotto to do since November 2003.[11]

42 U.S.C. §2000e-2(m) provides that:

> Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining

---

[11] In this connection it is instructive to note that "[c]ourts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions." Mesnick v. General Electric Co., 950 F.2d at 825 (citations omitted); Felciano De La Cruz v. El Conquistador Resort And Country Club, 218 F.3d 1 (1st Cir. 2000).

24

>party demonstrates that ... national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

42 U.S.C. §2000e-5(g)(2)(B) further states that:

>On a claim in which an individual [plaintiff] proves a violation under section 2000e-2(m) of this title and a respondent [employer] demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court:
>
>>(i)  may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and
>
>>(ii)  shall not award any damages or issue and order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

Since Berkshire would have laid Cotto off and would not have rehired him even "in the absence of the [alleged] impermissible motivating factor" that he could not understand oral instructions in English, at the very least Cotto is precluded from recovering any damages (or being reinstated) in this action as a matter of law. Weston-Smith v. Cooley Dickinson Hospital, Inc., 282 F.3d 60 (1st Cir. 2002); Carey v. Mt. Desert Island Hospital, 156 F.3d 31 (1st Cir. 1998); Tanca v. Nordberg, 98 F.3d 680 (1st Cir. 1996), cert. denied, 520 U.S. 1119, 117 S.Ct. 1253, 137 L.Ed.2d 333 (1997).

**(2) COTTO'S CHAPTER 151B CLAIM**:

>M.G.L. c. 151B, §4(1), provides that:
>
>>It shall be an unlawful practice:  1.  For an employer ... because of the ... national origin ... of any individual to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of em-

25

ployment, unless based upon a bona fide occupational qualification.

With the exception of the "mixed motivation" issue (infra), where (as here) Cotto's claim of discrimination is based upon "direct evidence" of "disparate treatment", the construction and interpretation of Chapter 151B, §4(1), is substantially similar to Cotto's Title VII claim, and courts routinely rely upon federal decisions to interpret Chapter 151B.  See Cloutier v. Costco Wholesale, 311 F.Supp.2d 190 (D.Mass. 2004), aff'd, 390 F.3d 126 (1st Cir. 2004), cert. denied, ___ U.S. ___, 125 S.Ct. 2940, 162 L.Ed.2d 873 (2005); Griel v. Franklin Medical Center, 71 F.Supp.2d 1, 8 n.5 (D.Mass. 1999), aff'd, 234 F.3d 731 (1st Cir. 2000); Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 646 N.E.2d 111 (1995); White v. University of Massachusetts at Boston, 410 Mass. 553, 574 N.E.2d 356 (1991).

Thus, as with Cotto's Title VII claim, analysis under McDonnell Douglas (and the Massachusetts cases predicated upon the same) is not applicable to Cotto's claim pursuant to Chapter 151B, and the ultimate issue under Chapter 151B is whether Berkshire intentionally discriminated against Cotto by treating him less favorably than individuals of other national origins because he was Hispanic.  See Wheelock College v. Massachusetts Commission Against Discrimination, 371 Mass. 130, 355 N.E.2d 309 (1976); Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 731 N.E.2d 1075 (2000); Lipchitz v. Raytheon Co., 434 Mass. 493, 751 N.E.2d 360 (2001);  Wynn & Wynn, P.C. v. Massachusetts Commission Against Discrimination, 431 Mass. 655, 729 N.E.2d 1068 (2000); Gates v. Flood, 57 Mass.App.Ct. 739, 785 N.E.2d 1289 (2003). Furthermore, a BFOQ will constitute a complete defense to a Chapter 151B claim of national origin discrimination if the (alleged) discriminatory job qualification affects the em-

ployee's ability to perform a job and concerns the essence of an employer's business. See Sarni Original Dry Cleaners, Inc. v. Cooke, 388 Mass. 611, 447 N.E.2d 1228 (1983); Piatti v. Jewish Community Centers of Greater Boston, 1 Mass.L.Rep. 383 (Sup.Ct. 1993).

Accordingly, the deficiencies with respect to Cotto's Title VII claim (supra) similarly preclude Cotto from recovering under Chapter 151B. There is no direct (and concededly no circumstantial) evidence that Berkshire intentionally discriminated against Cotto based upon his national origin (as opposed to his inability to perform the work at Berkshire) and, even if such evidence existed, the ability to understand oral instructions in English constitutes a BFOQ. Accordingly, Cotto's Chapter 151B claim must also be dismissed.

In contrast to Cotto's Title VII claim, however, the remedial limitation in 42 U.S.C. §2000e-2(m) and §5(g)(2)(B) with respect to any possible "mixed motivation" of Berkshire has not been adopted by the Massachusetts courts.

Therefore, Berkshire may not be held liable under Chapter 151B if Berkshire had a legitimate reason, standing alone and separate and apart from any (alleged) improper discrimination, for laying Cotto off and not rehiring him, or if Cotto's inability to understand oral instructions in English was not the causative or determinative factor, did not contribute significantly to and/or was not a material and important consideration for or with respect to Berkshire laying Cotto off and not rehiring him. Wynn & Wynn, P.C. v. Massachusetts Commission Against Discrimination, supra; Lipchitz v. Raytheon Co., supra; Chief Justice For Administration And Management of the Trial Court v. Massachusetts Commission Against Discrimination, 439 Mass. 729, 791 N.E.2d 316 (2003);

27

<u>Connolly</u> v. <u>Suffolk County Sheriff's Department</u>, 62 Mass.App.Ct. 187, 815 N.E.2d 596 (2004).

As noted above, Berkshire laid Cotto off in and did not rehire him after November 2003 because Berkshire did not have enough work for Cotto to do, not because he was unable to understood oral instructions in English. Accordingly, even assuming there were direct evidence that Berkshire intentionally discriminated against Cotto based upon his national origin and the requirement that Cotto be capable of understanding oral instructions in English did not constitute a BFOQ, Cotto's Chapter 151B claim must, nevertheless, be dismissed (as opposed to merely limiting Cotto's remedy).

## **CONCLUSION**

By reason of the foregoing, the motion of Berkshire for summary judgment should be granted and the claims of Cotto pursuant to Title VII and Chapter 151B dismissed with prejudice as a matter of law. Fed.R.Civ.P.56(c). At the very least Cotto should be precluded from recovering any damages in this action, and Berkshire should not be required to rehire Cotto, in connection with his Title VII claim.

Dated: Springfield, Massachusetts
January 6, 2006

                            LAW OFFICES OF ROBERT ARONSON

                            /s/ Robert Aronson
                        By _____
                              Robert Aronson, Esq.

                        Attorney for Defendant Berkshire
                         Manufacturing Corporation

101 State Street  
Springfield, Massachusetts   01103  
Telephone:  (413) 733-2600  
Facsimile:  (413) 737-4318  
BBO No.  541800  

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by electronic filing on January  6, 2006.

/s/ Robert Aronson  
_____  
Robert Aronson