UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          :
CARLOS CLAUDIO COTTO,            :
                                          :
                      Plaintiff,        :        DOCKET NO.  3:04-cv-30216-KPN
                                          :
v.                                       :
                                          :
BERKSHIRE MANUFACTURING       :
CORPORATION,                        :
                      Defendant.       :
_____:


## JOINT PRETRIAL MEMORANDUM

**1.    CONCISE SUMMARY OF THE EVIDENCE**

   **a.    Plaintiff's Concise Summary of the Evidence**

   Plaintiff Carlos Claudio Cotto ("Mr. Claudio") intends to offer evidence at trial
which will demonstrate the following: a) Mr. Claudio was laid off from his employment
with the defendant in November 2003, due to his "lack of English" in favor of less
experienced white employees and employees without limited English proficiency with
fewer qualifications and less seniority with defendant; b) Mr. Claudio was not hired or
re-hired to a position with the defendant despite his greater experience and
qualifications as compared to those white employees and employees without limited
English proficiency and that these acts or omissions were on account of his national
origin.

By way of damages, Mr. Claudio will present evidence to show that he is entitled to an award of lost back wages, lost employee benefits and lost future wages and front pay. The evidence will further show that Mr. Claudio suffered emotional distress, mental anguish and physical pain and suffering as a direct result of the defendant's discriminatory actions. Lastly, the evidence will show that the discriminatory actions of the defendant resulted from malice or reckless indifference to Mr. Claudio's civil rights, and that he is entitled to an award of punitive damages under both federal and state laws against discrimination.

      **b.**    **Defendant's Concise Summary of the Evidence**

Berkshire was formed in or about 1983 and is engaged in the business of electro-chemical plating parts for various commercial customers.  Although he had no experience and could not understand oral instructions in English, Berkshire hired Claudio on July 17, 1997 primarily as a "racker" for a single simple, long term, repetitive job with a large number of the same part ("Simple Jobs") with respect to which the racking instructions were simple.  As of in or about November 2003, Berkshire had lost that job as well as most of its other Simple Jobs, or the amount of work with respect to such other Simple Jobs had substantially decreased, and the revenues of Berkshire had declined significantly.  Therefore, Berkshire laid Claudio off on November 11, 2003 for lack of work (as it had done on 8 previous occasions) and has not replaced Claudio.  In addition, during the period from prior to and through November 2003 (and continuing to date), the Simple Jobs at Berkshire have been largely replaced by more complicated, short term, non-repetitive jobs which involve

smaller numbers of parts ("Complex Jobs").  Because the instructions with respect to the racking and plating of the Complex Jobs are more complicated and have to be continuously given for each different job, the bilingual employees at Berkshire do not have (as they previously had with respect to the Simple Jobs) enough time to translate the oral English racking and/or plating instructions into Spanish for Claudio and still perform their own jobs.  Therefore, Berkshire has not rehired Claudio because Berkshire still does not have enough Simple Jobs.  In addition, to the extent there have been enough Complex Jobs at Berkshire, Claudio is not able to perform them because of his inability to understand oral instructions in English.  Berkshire did not lay Claudio off because he could not understand oral instructions in English.  And even if it were concluded that Berkshire did not rehire Claudio because of his inability to understand oral instructions in English with respect to the Complex Jobs which existed at Berkshire, the safe, efficient and correct plating of the Complex Jobs and Berkshire's operations would be substantially undermined and compromised if Berkshire could not require that the employees who worked on the Complex Jobs understand oral instructions in English.  Berkshire's decisions to lay Claudio off and to not rehire him were not motivated or based upon Claudio's Hispanic national origin.

## 2.    FACTS ESTABLISHED BY THE PLEADINGS OR BY STIPULATION

a.    Mr. Claudio is a Puerto Rican man who resides in Holyoke, MA.

b.    Berkshire is a Massachusetts corporation.  At all times relevant to the Complaint in this matter, Berkshire was located at 175 Progress Avenue in Springfield, MA.

c.    At all times relevant to the plaintiff's complaint, Berkshire employed 6 or more employees.

d.    At all times relevant to the plaintiff's complaint, Berkshire was engaged in an industry affecting commerce.

e.    Donald Schulz is the President, Chief Operating Officer and sole principal of Berkshire Manufacturing Corporation and has held those positions since he began the business began in or around 1983.

f.    Berkshire's sole business is plating and finishing various customer's parts, the vast majority of which are metal.

g.    Since its inception, Berkshire has performed these functions and also packs the parts to be returned to the customers after plating.

h.    Mr. Claudio was hired by Berkshire in or around July 1997.

i.    At the time Mr. Claudio was hired, Roberta Desjardins was Berkshire's plant manager and had been so for most of her over 20 year career with Berkshire.

j.    Mr. Claudio was hired as a racker of parts.

k.    Mr. Claudio is a high school graduate.

l.    Mr. Claudio was "laid off" from Berkshire in November 2003.

m.    Mr. Claudio applied for hire and re-hire after his lay off in November 2003, including when he saw what he believed was his position advertised in the newspaper.

n.    Mr. Claudio was never offered any full-time or part-time positions that became available after his termination in November 2003.

o.    Employees hired by Berkshire after Mr. Claudio was hired include Katherine Corbin (white), Carol A. Frank (white), Elizabeth M. Gillette (white), Cristobal Henriquez (not of limited English proficiency), Marcin Jandzis (white).

p.    Mr. Claudio was an at will employee at Berkshire.

**3.    CONTESTED ISSUES OF FACT**

a.    Whether the process used for each tank in which a part is dipped is essentially the same.

b.    Whether the information necessary to plate is attained through job knowledge, watching coworkers, on the job training or trial and error.

c.    Whether many similar techniques are used in the shop today that were used at Berkshire 20 years ago.

d.    Whether sometime shortly into his tenure with Berkshire, Mr. Claudio was given increased responsibility and began plating parts.

e.    Whether the job functions of racking and plating at Berkshire which include unracking, packing, plating and inspecting parts has remained substantially the same since around 1997.  (Desjardins Dep. pages 41-44, Ex. 3).

f.    Whether the process for plating parts such as those plated at Berkshire has remained similar for fifteen years and remains substantially the same through the present.

g.    Whether all that changed while and since Mr. Claudio worked at Berkshire with respect to racking, plating, inspecting or packing of parts since prior to

when Mr. Claudio was terminated in 2003 through the present was the location of the tanks on the shop floor.

h.      Whether the technique for inspecting parts at Berkshire has remained substantially the same for about 20 years.

i.      Whether Mr. Claudio used his skills to perform various jobs for a number of different customers through his termination in November 2003.

j.      Whether the work load at Berkshire decreased in any way at or since the time Mr. Claudio was laid off.

k.      Whether Cathy Corbin, Elizabeth Gillette and Carol Frank, all of whom were white and hired after Mr. Claudio, were forepersons.

l.      Whether Cathy Corbin, Elizabeth Gillette and Carol Frank, all of whom were white and hired after Mr. Claudio, performed many of the same job functions as Mr. Claudio.

m.      Whether the company routinely continues to hire workers for racking, plating, or inspecting functions.

n.      Whether shortly after he was terminated from his employment, Mr. Claudio saw what was substantially his position advertised in the newspaper.

o.      Whether Cristobal Henriquez or Marcin Jandzis performed many of the same job functions as Mr. Claudio.

p.      Whether Berkshire hired a number of people who were white or not of limited English proficiency to replace Mr. Claudio after his termination.

q.      Whether many of the job duties performed by the new hires were the same functions previously performed well by Mr. Claudio.

r.      Whether any level of English proficiency is a bona fide occupational qualification.

s.      Whether Berkshire has admitted that it laid Mr. Claudio off or did not rehire Mr. Claudio because of "lack of English" or because he could not understand oral instructions in English?

t.      Whether Mr. Claudio was laid off by Berkshire in November 2003 for lack of work?

u.      Whether after Mr. Claudio was laid off by Berkshire the job which Claudio had been performing at Berkshire remained open?

v.      Whether after Berkshire laid Mr. Claudio off Berkshire attempted to hire or hired someone with skills and qualifications which were similar to Mr. Claudio's skills and qualifications to fill the job which Claudio had been performing at Berkshire?

w.      Whether after Mr. Claudio was laid off by Berkshire Mr. Claudio was qualified to perform a job which existed at Berkshire?

x.      Whether Mr. Claudio was not rehired by Berkshire after November 2003 because there was not enough work at Berkshire which Mr. Claudio was capable of performing?

y.      Whether after Berkshire laid Mr. Claudio off Berkshire attempted to hire someone or hired someone with skills and qualifications which were similar to Mr. Claudio's skills and qualifications to fill a job which existed at Berkshire which Mr. Claudio was qualified to perform?

z.      Whether the national origin of Mr. Claudio was a determinative or motivating factor, or contributed significantly to and was a material and significant or

important ingredient, in connection with Berkshire's decision to lay Claudio off or to not rehire him?

aa.    Whether the ability of Mr. Claudio to understand oral instructions in English was reasonably necessary to the normal operation of Berkshire's business and whether the safe, efficient and correct performance of the jobs which existed at Berkshire after November 2003 which Mr. Claudio was able to do would be undermined if Berkshire could not require that Mr. Claudio be able to understand oral instructions in English?

bb.    If it were concluded that Berkshire engaged in any illegal discrimination, whether Berkshire would have laid Mr. Claudio off and would not have rehired Mr. Claudio regardless of Mr. Claudio's national origin, or would have made the same decision to lay Mr. Claudio off and not rehire him even if Berkshire had not taken Mr. Claudio's national origin into account?

cc.    If it were concluded that Berkshire engaged in any illegal discrimination, whether Mr. Claudio sustained any damages as a result of such discrimination and, if so, the amount of such damages?

dd.    If it were concluded that Berkshire engaged in any illegal discrimination and that Claudio sustained any damages as a result, whether Mr. Claudio made reasonable and diligent efforts to mitigate such damages?

ee.    If it were concluded that Berkshire engaged in any illegal discrimination, whether Berkshire acted with malice or reckless indifference to federal law when it laid Mr. Claudio off and failed to rehire him and/or whether Berkshire's actions were outrageous because of Berkshire's evil motive or intent or because such actions

involved malicious, wanton or oppressive conduct which was in reckless disregard or with callous indifference to Mr. Claudio's rights?

The plaintiff contests that the following is a contested fact at trial:

ff.     Whether Claudio was capable of understanding the oral instructions in English with respect to the work which existed at Berkshire in and after November 2003?

**4.     JURISDICTIONAL QUESTIONS**

None.

**5.     PENDING MOTIONS**

Defendant's Motion In *Limine* For Permission To Ask Plaintiff Questions In English.

Defendant's Motion In *Limine* To Compel Claudio To Produce 2005 Tax Return Information.

Plaintiff's Motion In *Limine* To Preclude Impermissible Opinion Testimony.

Plaintiff's Motion In *Limine* To Preclude Testimony And Evidence Not Provided In Discovery.

Plaintiff's Motion In *Limine* To Preclude Evidence Of Unemployment Compensation Payments To Plaintiff.

**6.     ISSUES OF LAW**

a.     **Plaintiff's Issues of Law**

1.     Whether Mr. Claudio presents direct evidence of discrimination because Berkshire has claimed that it laid off Mr. Claudio and did not hire him to open positions due to his lack of English.

Typically, direct evidence consists of statements of discriminatory intent attributable to an employer and a disparate treatment plaintiff must show by direct evidence that an illegitimate criterion was a substantial factor in the decision. Price Waterhouse v. Hopkins, 490 U.S. 228, 276 (1989).

The law has long recognized that language and discrimination based on national origin are inextricably linked.  Many Courts view language as a trait so related to one's national origin that unfavorable treatment based on language or language skills may be a viewed proxy for national origin discrimination.   See, e.g., Hernandez v. New York, 500 U.S. 352, 371-71 (1991) ("It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis."); Lau v. Nichols, 414 U.S. 563, 568-69 (1974) (failure to provide equal educational opportunities to Chinese-speaking students constituted national origin discrimination under Title VI of the Civil Rights Act of 1964); Hernandez v. Texas, 347 U.S. 475, 480 n.12 (1954) ("just as persons of a different race are distinguished by color, these Spanish names provide ready identification of the members of this class [of Mexican-Americans]"); Yniguez v. Arizonans for Official English, 69 F. 3d 920, 948 (9th Cir. 1995), vacated on other grounds, 520 U.S. 43 (1997) ("Since language is a close and

meaningful proxy for national origin, restrictions on the use of languages may mask discrimination against specific national origin groups"); Odima v. Westin Tucson Hotel Co., 991 F. 2d 595, 601 (9th Cir. 1993) ("accent and national origin are obviously inextricably intertwined"); U.S. v. Alcantar, 897 F. 2d 436, 440 (9th Cir. 1990) (acknowledging "how closely tied Spanish language is to Hispanic identity"); Fragante v. City and County of Honolulu, 888 F. 2d 591 (9th Cir. 1989), cert. denied, 494 U.S. 1081 (1990) (accent discrimination may be actionable as national origin discrimination under Title VII); Gutierrez v. Municipal Court, 838 F. 2d 1031, 1039 (9th Cir. 1988), vacated as moot, 490 U.S. 1016 (1989) ("the cultural identity of certain minority groups is tied to the use of their primary tongue," and that "rules which have a negative effect on . . . non-English speakers" may constitute national origin discrimination).  Similarly, the EEOC's Guidelines on Discrimination Because of National Origin Discrimination establish that it will carefully investigate charges of "[f]luency-in-English requirements, such as denying employment opportunities because of an individual's foreign accent, or inability to communicate well in English." 29 C.F.R. § 1606.6(b)(1).

The defendant's admission that it fired Mr. Claudio and failed to hire him to open positions for which he was qualified due to his "lack of English" is the type of direct evidence that demonstrates "that an illegitimate factor played a substantial role in the employment decision."  Price Waterhouse, 490 U.S. at 276.

2.    Whether the defendant can prove that a certain level of English proficiency is a *bona fide* occupational qualification of the positions previously performed by Mr. Claudio and  any positions for which he applied.

-11-

Section 703(e) of Title VII only permits overt discrimination "where … national origin … is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. §2000e-2(e)(1). Since the assertion of a BFOQ is in the nature of an affirmative defense, the employer bears the burden of establishing that an otherwise unlawful policy or practice falls within this "extremely narrow exception to the general prohibition of discrimination on the basis of sex." Dothard v. Rawlinson, 433 U.S. 321, 332 (1977).  "[I]n order to qualify as a BFOQ, a job qualification must relate to the 'essence' or to the 'central mission of the employer's business.' " International Union UAW v. Johnson Controls, 499 U.S. 187 (1991).  "Title VII limits those situations in which discrimination is permissible to "certain instances" where ... discrimination is "reasonably necessary" to the "normal operation" of the "particular" business. . . .   But the most telling term is "occupational"; this indicates that these objective, verifiable requirements must concern job-related skills and aptitudes." Id. at 201.

Under the BFOQ analysis, discrimination is permissible only if those aspects of a job that allegedly require discrimination fall within the "essence" of the particular business. Johnson Controls, 499 U.S. at 206. Stated differently, overt discrimination "is valid only when the essence of the business operation would be undermined" if the business eliminated its discriminatory practice or policy. Dothard, 433 U.S. at 332.

3.    Whether the actions and omissions of the defendant resulting in its lay off and failure to hire Mr. Claudio to an open position constitute illegal discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. 2000e-2(a)(1) and the Massachusetts Laws Against Discrimination, M.G.L. c. 151B, § 4(1).

### b.    Defendant's Issues of Law

1.    Whether Claudio was an "at-will" employee.  See Upton v. JWP Businessland, 425 Mass. 756, 682 N.E.2d 1357 (1997); Maddaloni v. Western Mass. Bus Lines, Inc., 386 Mass. 877, 438 N.E.2d 351 (1982).

2.    Whether Claudio has established a prima facie case that when Berkshire laid Claudio off, the job which Claudio was performing at Berkshire remained open and Berkshire attempted to hire someone or hired someone with skills and qualifications which were similar to Claudio's skills and qualifications to fill the job which Claudio had been performing at Berkshire.  See Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc., 399 F.3d 52 (1st Cir. 2005); Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15 (1st Cir. 1999); Cumpiano v. Banco Santander Puerto Rico, 902 F.2d 148 (1st Cir. 1990); Feliciano De La Cruz v. El Conquistador Resort And Country Club, 218 F.3d 1 (1st Cir. 2000).

3.    Whether Claudio has established a prima facie case that when Berkshire failed to rehire Claudio, Claudio was qualified to perform a job which existed at Berkshire and Berkshire attempted to hire someone or hired someone with skills and qualifications which were similar to Claudio's skills and qualifications to fill the job which existed at Berkshire which Claudio was qualified to perform.  See Woods v.  v. Friction Materials, Inc., 30 F.3d 255 (1st Cir. 1994); Fragante v. City And County Of Honolulu, 888 F.2d 591 (9th Cir. 1989).

4.    Whether Berkshire intentionally and deliberately discriminated against Claudio on the basis of his national origin (see St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Texas Department of Community

Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Feliciano De La Cruz v. El Conquistador Resort And Country Club, 218 F.3d 1 (1st Cir. 2000)), or:

(a)  whether Claudio's national origin was a determinative or motivating factor in connection with Berkshire's decision to lay Claudio off or to not rehire him (see 42 U.S.C. § 2000e-2(m); Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); Carey v. Mt. Desert Island Hospital, 156 F.3d 31 (1st Cir. 1998)), and/or

(b)  whether Claudio's national origin contributed significantly to and was a material and significant or important ingredient in Berkshire's decision to lay Claudio off or to not rehire him.  See Cariglia v. Hertz Equipment Rental Corp., 363 F.3d 77 (1st Cir. 2004); Lipchitz v. Raytheon Co., 434 Mass. 493, 751 N.E.2d 360 (2001).

5.    Whether it was proper and did not constitute illegal discrimination on the basis of national origin for Berkshire:

(a)  to lay Claudio off if Berkshire believed that there was not enough work at Berkshire at the time when Claudio was laid off which Claudio was able to do, and

(b)  to not rehire Claudio if Berkshire believed that there was not enough work at Berkshire for Claudio to do after he was laid off or if Berkshire believed that Claudio would not be able to do the work which existed at Berkshire after Claudio was laid off because of his "lack of English" or inability to understand oral instructions, unless Claudio's national origin played a substantial role in Berkshire's decision to lay Claudio off or to not rehire him, or unless Berkshire would not have laid Claudio off or would have rehired Claudio if he had not been of Hispanic national origin.  See

Cosme v. The Salvation Army, 284 F.Supp.2d 229 (D.Mass. 2003); Fragante v. City And County Of Honolulu, 888 F.2d 591 (9th Cir. 1989); Stephen v. PGA Sheraton Resort, Ltd., 873 F.2d 276 (11th Cir. 1989); Shieh v. Lyng, 710 F.Supp. 1024 (E.D.Pa. 1989), aff'd, 897 F.2d 523 (3d Cir. 1990); Dalmau v. Vicao Aerea Rio-Grandense, S.A., 337 F.Supp.2d 1299, 1305 (S.D.Fla. 2004); Equal Opportunity Commission Notice Number 915.003, Section 13 (National Origin Discrimination), § 13-V(B).

6.      Whether there is any requirement that Berkshire be capable of giving oral instructions in Spanish to Claudio or that Berkshire employ people at Berkshire for the purpose of translating oral instructions from English into Spanish for Claudio. See id.; Vasquez v. McAllen Bag & Supply Co., 660 F.2d 686 (5th Cir. 1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3509, 73 L.Ed.2d 1384 (1982); De La Cruz v. New York City Human Resources Administration, DSS, 82 F.3d 16 (2d Cir. 1996); Dercach v. Indiana Department of Highways, 45 FEP Cases 899 (N.D.Ind. 1987).

7.  If it were concluded that Berkshire engaged in any illegal discrimination, whether the ability of Claudio to understand oral instructions in English was reasonably necessary to the normal operation of Berkshire's business and whether the safe, efficient and correct performance of the jobs at Berkshire which Claudio was capable of doing would be undermined if Berkshire could not require that Claudio be capable of understanding oral instructions in English.  See 42 U.S.C. §2000e-2(e); Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); Dothard v. Rawlinson, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); International Union, UAW v. Johnson Controls, Inc., 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991); Fragante v. City and County of Honolulu, 699 F.Supp. 1429

(D.Hawaii 1987), aff'd, 888 F.2d 591 (9th Cir. 1989), cert. denied, 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 942 (1990); Garcia v. Rush-Presbyterian-St. Lukes Medical Center, 660 F.2d 1217 (7th Cir. 1981); Mejia v. New York Sheraton Hotel, 459 F.Supp. 375 (S.D.N.Y. 1978), aff'd in pertinent part, 21 FEP Cases 981 (2d Cir. 1979), on remand, 476 F.Supp. 1068 (S.D.N.Y. 1979).

8.    If it were concluded that Berkshire engaged in any illegal discrimination, whether Claudio is precluded from recovering any damages pursuant to Title VI, and no damages pursuant to M.G.L. c. 151B, because Berkshire would have laid Claudio off and would not have rehired him regardless of Claudio's national origin, or because Berkshire would have made the same decision to lay Claudio off and to not rehire him even if Berkshire had not taken Claudio's national origin into account.  See Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); Fields v. Clark University, 966 F.2d 49 (1st Cir. 1992); 42 U.S.C §§ 2000e-2(m) and 5(g)(2)(B); Weston-Smith v. Cooley Dickinson Hospital, Inc., 282 F.3d 60 (1st Cir. 2002); Tanca v. Nordberg, 98 F.3d 680 (1st Cir. 1996), cert. denied, 520 U.S. 1119, 117 S.Ct. 1253, 137 L.Ed.2d 333 (1997); Wynn & Wynn, P.C. v. Massachusetts Commission Against Discrimination, 431 Mass. 655, 729 N.E.2d 1068 (2000); Lipchitz v. Raytheon Co., 434 Mass. 493, 751 N.E.2d 360 (2001).

9.    If it were concluded that Berkshire engaged in any illegal discrimination, whether Claudio is entitled to recover any resulting damages and whether Claudio made reasonable and diligent efforts to mitigate such damages.  See 42 U.S.C. § 2000e-5(g)(1); Johnson v. Spencer Press Of Maine, Inc., 364 F.3d 368 (1st Cir.

2004); <u>Torres</u> v. <u>Caribbean Forms Manufacturer</u>, 286 F.Supp.2d 209 (D.P.R. 2003);

<u>Koster</u> v. <u>Trans World Airlines, Inc.</u>, 181 F.3d 24 (1st Cir. 1999); <u>Stonehill College</u> v.

<u>Massachusetts Commission Against Discrimination</u>, 441 Mass. 549, 808 N.E.2d 205

(2004); <u>First Circuit Draft Instructions</u>, § 7.1; U.S.C. § 1981a(5)(3); <u>Rodriguez-Torres</u>

v. <u>Caribbean Forms Manufacturer, Inc.</u>, 399 F.3d 52 (1st Cir. 2005); <u>Koster</u> v. <u>Trans</u>

<u>World Airlines, Inc.</u>, 181 F.3d 24 (1st Cir. 1999); <u>Stonehill College</u> v. <u>Massachusetts</u>

<u>Commission Against Discrimination</u>, 441 Mass. 549, 808 N.E.2d 205 (2004).

10.    If it were concluded that Berkshire engaged in any illegal discrimination,

whether Claudio is entitled to punitive damages because Berkshire acted with malice

or reckless indifference to federal law (<u>see</u> 42 U.S.C § 1981a(b); <u>Rodriguez-Torres</u> v.

<u>Caribbean Forms Manufacturer, Inc.</u>, 399 F.3d 52 (1st Cir. 2005)) and/or because

Berkshire's actions were outrageous because of Berkshire's evil motive or intent or

because Berkshire's actions involved malicious, wanton or oppressive conduct which

was in reckless disregard of or with callous indifference to Claudio's rights.  <u>See</u>

<u>Borne</u> v. <u>Haverhill Golf & Country Club, Inc.</u>, 58 Mass.App.Ct. 306, 791 N.E.2d 903

(2003); <u>Abramian</u> v. <u>President & Fellows Of Harvard College</u>, 432 Mass. 107, 731

N.E.2d 1075 (2000).

11.    Whether any unemployment compensation benefits received or to be

received by Claudio may be considered by the jury in determining any damages to be

awarded to Claudio.  <u>See</u> <u>Lussier</u> v. <u>Runyon</u>, 50 F.3d 1103 (1st Cir. 1995).

12.    If it were concluded that Berkshire laid Claudio off or did not rehire him

because of "lack of English" or because he could not understand oral instructions in

English, whether the same constituted "direct evidence" of discrimination.  <u>See</u> <u>Patten</u>

v. Wal-Mart Stores East, Inc., 300 F.3d 21, 25 (1st Cir. 2002), cert. denied, 539 U.S. 937, 123 S.Ct. 2572, 156 L.Ed.2d 621 (2003) (citing Fernandes v. Costa Brothers Masonry, Inc., 199 F.3d 572 (1st Cir. 1999); and Febres v. Challenger Caribbean Corp., 214 F.3d 57 (1st Cir. 2000)); Dalmau v. Vicao Aerea Rio-Grandense, S.A., 337 F.Supp.2d 1299, 1305 (S.D.Fla. 2004).

13.    Whether the jury should be given an instruction which relates to the burden-shifting framework under McDonnell Douglas .  See United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); White v. New Hampshire Department of Corrections, 221 F.3d 254 (1st Cir. 2000); Sanchez v. Puerto Rico Oil Co., 37 F.3d 712 (1st Cir. 1994); Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir. 1979).

## 7.    REQUESTED AMENDMENTS TO PLEADINGS

None.

## 8.    ADDITIONAL MATTERS

Motions in Limine; need for a Spanish to English interpreter.

## 9.    PROBABLE LENGTH OF TRIAL

Five day jury trial.

## 10.    WITNESSES

### a.    Plaintiff's Witnesses

Carlos Claudio Cotto
c/o Heisler, Feldman, McCormick & Garrow, P.C.
1145 Main Street, Suite 508
Springfield, MA 01103
(413) 788-7988

Background, nature of work at Berkshire, acts of discrimination against him while employed at Berkshire and damages.

Marilyn Cordero -- Background, nature of work at Berkshire, acts of discrimination against Mr. Claudio while employed at Berkshire and damages.

Jennifer Cordero – damages

Both at: Dwight Street
Holyoke, MA 01040
533-6277

Elizabeth Cordero—Background, acts of discrimination against Mr. Claudio while employed at Berkshire, nature of work at Berkshire, and damages.
5 Vernon Street
Holyoke, MA  01040
533-6730

Ramona Ruiz -- damages
5 Vernon Street
Holyoke, MA  01040
536-2173

Ramona Cordero -- damages
100 Hampshire Street
Holyoke, MA  01040
210-1930

Maribel Claudio -- damages
Maria Cotto -- damages
Puerto Rico
1-787-263-1526

Robert A. Rosenthal, Ph.D.—economic damages
Stonehill College
320 Washington Street
Easton, MA 02357-4125
(508) 565-1200

The following current or former employees of the Defendant some of whom whose addresses and phone numbers are not known to the Plaintiff, including the following individuals:

Michael Cruz, Springfield, MA – Background, nature of work at Berkshire, acts of discrimination against Mr. Claudio while employed at Berkshire and damages.
739-5488

Felix Escobar -- – Background, nature of work at Berkshire, acts of discrimination against Mr. Claudio while employed at Berkshire, the advertisement for Mr. Claudio's position and damages.
Holyoke, MA
210-7658

Juan Robles – Background, nature of his work and about other employees at Berkshire, acts of discrimination against Mr. Claudio while employed at Berkshire and damages.


Victor Santiago
Eric (Last name unknown) – Background, nature of his work and about other employees at Berkshire, acts of discrimination against Mr. Claudio while employed at Berkshire and damages.
221-2230

Donald J. Schulz – Background, nature of work at Berkshire, acts of discrimination against Mr. Claudio while employed at Berkshire.

Gloria Schulz – Background, nature of work at Berkshire, acts of discrimination against Mr. Claudio while employed at Berkshire and economic damages.

Robert Desjardins – Background, nature of work at Berkshire, acts of discrimination against Mr. Claudio while employed at Berkshire.



**b.    Defendant's Witnesses**

 Although Berkshire reserves the right to call other witnesses upon reasonable notice, it is presently anticipated that Berkshire will call the following witnesses on its direct case:

1.  Donald J. Schulz (c/o Berkshire, 175 Progress Avenue, Springfield, MA) will primarily testify regarding the formation of Berkshire, the nature and evolution of Berkshire's business, the national origin's of other employees at Berkshire, the circumstances under which Claudio was hired, the ability of Claudio to

understand oral instructions in English, the work performed by Claudio and other employees at Berkshire, the reasons Claudio was laid off, the reasons Claudio was not rehired, the employment records relating to Claudio, the employment benefits received by Claudio and others at Berkshire, and that Berkshire did not discriminate against Claudio based upon his national origin.

2. Roberta Desjardins (c/o Berkshire, 175 Progress Avenue, Springfield, MA) will primarily testify regarding the nature and evolution of Berkshire's business, the circumstances under which Claudio was hired, the ability of Claudio to understand oral instructions in English, the work performed by Claudio and other employees at Berkshire, the reasons Claudio was laid off, the reasons Claudio was not rehired and that Berkshire did not discriminate against Claudio based upon his national origin.

3. Gloria Schulz (c/o Berkshire, 175 Progress Avenue, Springfield, MA) will primarily testify regarding the employment records relating to Claudio and the employment benefits received by Claudio and others at Berkshire.

4. Katherine Corbin (c/o Berkshire, 175 Progress Avenue, Springfield, MA) will primarily testify regarding the work performed by her and others at Berkshire.

5. Elizabeth Gillette (c/o Berkshire, 175 Progress Avenue, Springfield, MA) will primarily testify regarding the work performed by her and others at Berkshire.

6. Victor Rosado (c/o Berkshire, 175 Progress Avenue, Springfield, MA) will primarily testify regarding the work performed by him and others at Berkshire.

7. Juan Robles (77 Lowell Street, Springfield, MA) will primarily testify regarding the work performed by him and others at Berkshire and the ability of Claudio to understand oral instructions in English.

8. Claudio (5 Vernon Street, Holyoke, MA) will primarily testify regarding the work he performed at Berkshire, his ability to understand oral instructions in English and Claudio's efforts to mitigate his damages.

## 11.    PROPOSED EXHIBITS

### a.    Plaintiff's Proposed Exhibits

The plaintiff does not stipulate to the admissibility of any of the defendant's exhibits at this time.

1.    Personnel records for Mr. Claudio reflecting hire date, lack of pay increases, levels of compensation, attendance, termination date, and reasons for termination of employment.

2.      Defendant's Answers to Interrogatories.

3.      Documents relating to the job advertisement placed by Berkshire in or around February 2004.

4.      The Position Statement submitted by the Defendant to the Massachusetts Commission Against Discrimination in response to the complaint of Mr. Claudio.

5.      Documents relating to the participation of Mr. Claudio in employee benefit plans.

6.      Documents reflecting the current net worth of Berkshire.

7.      Documents reflecting employment income for Mr. Claudio through the date of trial.

8.      Personnel records for other Berkshire employees provided in discovery reflecting hire date, levels of compensation, attendance, termination date, and reasons for termination of employment.

**b.    Defendant's Proposed Exhibits**

The defendant does not stipulate to the admissibility of any of the plaintiff's exhibits at this time.

Although Berkshire reserves the right to introduce other exhibits upon reasonable notice, it is presently anticipated that Berkshire will introduce the following exhibits on its direct case:

1. Berkshire time/payroll records with respect to Claudio.

2. Photographs of the Berkshire plating facilities, the plating racks and the parts which are plated at Berkshire.

3. Claudio's tax returns and related documents.

4. February 16, 2004 letter from Berkshire to Claudio.

5. February 16, 2004 letter from Berkshire to Claudio (2nd Request).

6. March 17, 2004 letter from Berkshire to Claudio.

7.  Massachusetts Division of Employment and Training statement of benefits charges, unemployment insurance requests for information and requests for separation and/or wage information.

8.  Berkshire checks to Claudio:  March 12, 2003 for $450; March 17, 2003 for $307.52; March 26, 2003 for $71.24; May 8, 2003 for $50; November 24, 2003 for $600.

9.  Racks which are used for plating parts at Berkshire.

10.  Parts which are plated at Berkshire.

11.  Racks which are used at Berkshire to plate parts.

Respectfully submitted,


| THE PLAINTIFF | THE DEFENDANT |
| By his Attorney, | By its Attorney, |

|        /s/ Suzanne Garrow | /s/ Robert Aronson |
| Suzanne Garrow | Robert Aronson |
| BBO# 636548 | BBO# 541800 |
| Heisler, Feldman, McCormick | Law Offices of Robert Aronson |
|        & Garrow, P.C. | 101 State Street |
| 1145 Main Street, Suite 508 | Springfield, MA 01103 |
| Springfield, MA 01103 | (413)733-2600 |
| (413) 788-7988 | |

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).

        /s/ Suzanne Garrow
Suzanne Garrow